```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

**RHONDA GUARINI,**
         **- Plaintiff**
      **v.**                           **CIVIL NO. 3:11CV01609(TPS)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION,**
         **- Defendant**

## MAGISTRATE JUDGE'S OPINION

The plaintiff, Rhonda Guarini, brings this appeal under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying her application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Payments ("SSI"). The plaintiff has moved for an order reversing the final decision of the Commissioner or, in the alternative, an order remanding this case back to the SSA for further proceedings (**Dkt. #18**). The defendant has moved for an order affirming the Commissioner's decision. **(Dkt. #27).** For the reasons stated below, the plaintiff's motion should be **GRANTED** in part, and **DENIED** in part. It should be **GRANTED** to the extent that it seeks a remand for further proceedings. It should be **DENIED** to the extent it seeks an order reversing the decision of the Commissioner. The

1


defendant's motion to affirm should be **DENIED**.  28 U.S.C. § 636(b)(1)(A).

## II.  STANDARD OF REVIEW

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function.  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977).  A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence."  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted).  "Substantial evidence" is less than a preponderance, but "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488

(1951).  See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence which supports the Commissioner's position, is required to "review the record as a whole")(citations omitted). Still, the ALJ need not "reconcile every conflicting shred of medical testimony."  Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).  In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision."  Morris v. Barnhardt, 02 Civ. 0377 (AJP), 2002 U.S. Dist. LEXIS 13681, at *12 (S.D.N.Y. July 26, 2002).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims.  Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers if the claimant is presently working in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  If not, the Commissioner next considers if the claimant has a medically severe impairment.  Id. § 416.920(a)(4)(ii).  If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment.  Id. § 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1.  If so, the disability is granted.  If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity ("RFC") allows him or her to perform any past

work.  Id. § 416.920(a)(4)(iv).  If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform.  Id. § 416.920(a)(4)(v).  If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits.  Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Berry, 675 F.2d at 467.

While the claimant bears the burden of proving the first four steps, the Commissioner must prove the final one.  Berry, 675 F.2d at 467.  Thus, if the claimant is successful in showing that he is unable to continue his past relevant work, "the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

### III.  DISCUSSION

**A.   Summary of the ALJ's Decision**

Applying the five-step sequential analysis for disability claims outlined above, the ALJ found at step one that the plaintiff was not presently working in substantial gainful activity. At Step 2, the ALJ found that the plaintiff had the following severe impairments: generalized arthragias, obesity, depression and anxiety related disorder and polysubstance abuse.  (Tr. 16).  See

4

20 CFR §§ 404.1520 (c) and 416.920 (c). Here, the ALJ also found that plaintiff suffered from medically determinable yet non-severe impairments of back pain, obstructive sleep apnea and hypertension. (Id.).  See 20 CFR §§ 404.1509, 404.1521, 416.909, 416.921. At Step 3, the ALJ found that plaintiff's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, 1.

Before proceeding to steps four and five, the ALJ evaluated the entire record in order to determine the plaintiff's residual functional capacity. The ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. (Tr. 19). Following the two-step standard used to evaluate claimaints' symptoms, the ALJ found that:

> claimaint's statements concerning her impairments and their impact on the ability to work are considerably more limited and restricted than is established by the medical evidence. The alleged limitations are self-imposed restrictions not supported by the medical evidence by clinical signs, symptoms, or laboratory findings. Furthermore, although the claimant has stated she has numerous restrictions in activities of daily living and being unable to work due to a myriad of impairments, no such restrictions have been objectively quantified. . . . In this case, the subjective complaint[']s far exceed the objective findings to demonstrate the existence of pain and limitations of such severity as to preclude the claimaint from performing work on a regular and continuing basis. (Tr. 20-21).

In order to support her determination, the ALJ reviewed the relevant medical evidence in the record beginning with the progress notes of Kenneth Newton, M.D., plaintiff's primary care physician, who prescribed treatment for some of plaintiff's physical symptoms. (Tr. 21). Next, the ALJ considered the psychiatric examination and report from Rahim Shamsi, M.D., who reviewed plaintiff's medical history and conducted a comprehensive clinical examination of the plaintiff. (Tr. 21-22). His mental status examination revealed that plaintiff's judgment was rated as fair and affect was mild to moderate with signs of anxiety. Based on his examination, Dr. Shamsi offered the Axis I diagnoses of major affective disorder, panic disorder with agoraphobia, alcohol dependence in remission and substance abuses. Functionally it was Dr. Shamsi's opinion that plaintiff may not be able to engage in gainful employment. (Tr. 21-22; 437-440). The ALJ also noted that contrary to Dr. Shamsi's opinion, Dr. Newton, who examined the plaintiff the following month, indicated that plaintiff was "feeling quite well" from a psychiatric perspective. (Tr. 22; 441).

The ALJ then went on to consider the treatment notes of Christina Gamble, LMFT, who provided individual therapy to the plaintiff and emphasized skills on how to manage negative thoughts and improve relationships at home. The ALJ noted that it was Ms. Gamble's opinion that plaintiff is unable to sustain an enjoyable life for any length of time due to mental health issues and is

unable to maintain focus or complete tasks. (Tr. 22). In assigning "little weight" to the opinion of Ms. Gamble, the ALJ, in addition to noting that she was not an acceptable medical source, expressly indicated that her conclusions "are not supported by medically acceptable signs, symptoms, and/or laboratory findings, and are out of proportion to the objective evidence obtained during and for the course of treatment." (Tr. 22). The ALJ went on to note that there are no treatment records to substantiate the degree of limitations Ms. Gamble assessed, and that, moreover, Ms. Gamble offered her opinion about the plaintiff when she had treated her for less than a month, or had not seen the plaintiff in over a year.

In contrast, the ALJ gave "significant weight" to the opinion of Robert Decarli, Psy.D., the psychologist employed by the Department of Disability Services ("DDS"), who did not examine the plaintiff but reviewed her medical records, including the report of Dr. Shamsi. Dr. Decarli found that functionally, the plaintiff retained the residual mental functional capacity to understand and recall simple, but not complex information and had the ability to maintain attention for two hours at a time and persist at simple tasks over an eight hour work day/forty hour per week schedule. He also found that the plaintiff was able to maintain adequate social function, but would be moderately limited in interacting with the general public. (Tr. 22.).

Based on this analysis, the ALJ found that plaintiff had the following residual functional capacity:

> claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567 (b) and 416.967 (b). Nonexertionally, she is able to understand, remember and carry out simple instructions for routine tasks through a normal workday and workweek with normal breaks on a sustained basis. She cannot tolerate sustained interaction with the genera[l]-public, but can tolerate interaction with coworkers, supervisors or the general-public superficially and for brief periods. She can tolerate direction for simple tasks within the ordinary work environment. She can tolerate little or no collaboration or teamwork with supervisors or coworkers and must work independently. She must also avoid concentrated exposure to flumes [sic], odors, dust, gases and pulmonary irritants.

After making this finding, the ALJ proceeded to step four of the sequential analysis and determined that the plaintiff is unable to perform any past relevant work as defined in 20 C.F.R. §§ 404.1565 and 416.965. Finally, at Step 5, the ALJ found that, given the plaintiff's residual functional capacity and limitations, age, education and work experience, when considered within the framework of the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 25). Accordingly, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. (Id.).

**B.   Analysis**

The ALJ's denial of the plaintiff's disability claim begins with her determination of the plaintiff's residual functional capacity, an assessment that was primarily anchored in the non-examining opinion of Dr. Decarli.  In so doing, the ALJ assigned "little weight" to the opinion of plaintiff's therapist, Christina Gamble, whose assessment suggests reservations about plaintiff's self-efficacy, and in addition, discounted, at least to some extent, the medical report of a non-treating medical source, Dr. Shamsi, who in this instance opined that plaintiff may not be able to work.  To so rely on the medical opinion of a non-examining source was not improper, especially in the absence of a treating source opinion with respect to plaintiff's residual mental functional capacity.  <u>Schisler v. Sullivan</u>, 3 F.3d 563, 569 (2d Cir. 1993) ("the opinions of nonexamining sources [may] override treating sources' opinions, provided they are supported by evidence in the records").

Therefore, taken alone, the opinion of Dr. Decarli, had it considered all of the medical evidence in the record, could arguably provide the substantial evidence to affirm the ALJ's determination. Unfortunately, Dr. Decarli's consultative exam did not consider all of the evidence in the record.  Some medical information was not available to him when he rendered his opinion, including treatment notes from Dr. Newton and additional records

9

from Ms. Gamble.  Perhaps most problematic, progress notes from a second therapist, Emily Prestiano, MSW, who began treating the plaintiff in September 2009, were also not available to Dr. Decarli when he rendered his opinion with respect to plaintiff's mental RFC.

The Commissioner argues that this error is harmless: the record that Dr. Decarli reviewed contained evidence of plaintiff's impairments when they were at their worst, and, in any event, the substantive treatment records denote improvement in her symptoms. That may be.  The plaintiff argues, on the contrary, that the after-acquired medical evidence indicates functional limitations that preclude her from gainful employment.  That is also possible. This Court will not hazard its own assessment of that medical evidence when the matter can be remanded to the Commissioner and its consultative examiners who are better positioned to weigh the medical evidence and determine plaintiff's mental residual functional capacity.

In so remanding, this Court is not attempting to create new precedent such that failure to consider after-acquired medical evidence is per se grounds for remand or reversal, or, that an examining source's failure to consider all of the medical evidence entitles her opinion, as a matter of course, to little or no weight.  Neither this Court nor the Second Circuit has ever set such strict rules.  Rather, based on the facts of *this* case and the

deficiencies identified in *this* medical record when the DDS consultative examiner rendered his medical opinion, the Court concludes that remand is appropriate here.

On remand, the ALJ is directed to provide its consultative examiner with the entire medical record, including the material that was not available to Dr. Decarli when he assessed plaintiff's impairments. 20 C.F.R. § 404.1521 (f). After obtaining the necessary medical opinions, the ALJ shall reconsider the plaintiff's residual functional capacity and provide a rationale for the resulting assessment based on the evidence. As this Court has recommended remand for failure to properly develop the record, it is not necessary to address the plaintiff's remaining contentions. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) ("[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard," the Second Circuit has indicated that remand "for further development of the evidence" is proper).

## IV.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the plaintiff's motion be **GRANTED** in part, and **DENIED** in part. It should be **GRANTED** to the extent it seeks a remand for further proceedings and it should be **DENIED** to the extent it seeks an order reversing the decision of the Commissioner. Either party may timely seek review of this opinion and recommendation in accordance

with Rule 72 (b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 72 (b).  Failure to do so may bar further review.  28 U.S.C. § 636 (b)(1) (B); Small v. Sec'y of Health & Human Services, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated at Hartford, Connecticut this  19th   day of February, 2013**.

                                           **/s/ Thomas P. Smith**
                                           **THOMAS P. SMITH**
                                           **UNITED STATES MAGISTRATE JUDGE**